UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

---

| | |
|---|---|
| AARON HOCKADAY, | : |
| Plaintiff, | : |
| v. | : |
| NEW JERSEY ATTORNEY GENERAL'S OFFICE<br>NEWARK POLICE DEPARTMENT;<br>SHEILAH COLEY, IN HER OFFICIAL CAPACITY AS POLICE DIRECTOR OF NEWARK POLICE DEPARTMENT;<br>STATE OF NEW JERSEY, DIVISION OF STATE POLICE;<br>JOSEPH FUENTES, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF NJSP;<br>DET JOHN PALACH, NJSP BADGE #7058;<br>DET RIVERA, NPD BADGE # unknown;<br>DSG RUANE, NJSP BADGE #5781;<br>TPR TORRES, NJSP BADGE #7072;<br>DET ARMAND, NPD BADGE # unknown;<br>DET MARCELLI, NPD BADGE # unknown;<br>John Does 1-5<br>Jane Does 1-5 | : CIVIL ACTION |
| Defendants. | : |

---

**COMPLAINT**

Plaintiff, AARON HOCKADAY (hereafter "Plaintiff"), with a residence address of 47 Newport Court, Brick Township, New Jersey 08724, by and through undersigned counsel, complain of the defendants and say that:

**JURISDICTION STATEMENT AND PARTIES**

1. This is an action for damages arising out of one or more violations of federal and state law, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendment to the United States Constitution, as well as New Jersey's Civil Rights Act (CRA), N.J. Stat. Ann. §§ 10:6-1 to -2.

2. This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 and § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights. Jurisdiction over the state law claims is founded upon the supplemental jurisdiction of this Court, 28 U.S.C. § 1367.

3. At all times relevant herein, Plaintiff, Aaron Hockaday, is and was a legal resident in the United States, and a resident of Ocean County, New Jersey, and is otherwise sui juris.

4. At all times relevant herein, Defendants include the State of New Jersey, Division of State Police (here after "NJSP") and the Newark Police Department (hereafter "NPD").

5. Defendant Joseph Fuentes was at all times relevant herein the Superintendent of the NJSP. He is sued in his official capacity.

6. Defendant Sheilah Coley was at all times relevant herein the Police Director of the NPD. She is sued in her official capacity.

7. Detective Joseph Palach, Badge Number 7058, was at all times relevant herein employed by the NJSP.

8. Detective Riveria, Badge Number unknown, was at all times relevant herein employed by the NPD.

9. Detective Sergeant Ruane, Badge Number 5781, was at all times relevant herein employed by the NJSP.

10. Trooper Torres, Badge Number 7072, was at all times relevant herein employed by the NJSP.

11. Detective Armand, Badge Number unknown, was at all times relevant herein employed by the NPD.

12. Detective Marcelli, Badge Number unkown, was at all times relevant herein employed by the NPD.

13. Defendants Palach, Riveria, Ruane, Torres, Armand and Marcelli are hereafter referred to collectively as the "Defendant Officers."

14. Defendant Officers were at all times relevant herein assigned to the New Jersey Attorney General's TIDE/TAG initiative, a program conducted in conjunction with the NPD, NJSP, Essex County Prosecutor's Office and other law enforcement agencies.

15. Defendant Officers were at all times relevant acting under color of state law as active and duly appointed NJSP and NPD officers, and in such capacity, as the agent, servant, and employee of Defendants NJSP and NPD.

16. The acts and practices constituting the violations alleged below have all occurred within the State of New Jersey, which is properly within the jurisdiction of the United States District Court in and for the District of New Jersey. Venue in the District of New Jersey, Newark Division, is proper because the incident which is the subject of this lawsuit occurred in the State of New Jersey and Defendants are located in this venue. *See* 28 U.S.C. § 1391(b)(1) and § 1391(b)(2).

17. Plaintiff has complied with all conditions precedent to the filing of this lawsuit; all applicable notices have been provided to Defendants.

18. Plaintiff has retained Law Office of Thomas R. Ashley, Esq. to represent his interests in prosecuting this action, and said law firm is entitled to their reasonable attorneys' fees and costs incurred in connection therewith.

## STATEMENT OF FACTS

19. At all times material hereto, the subject incident arises of out of the brutal battery of Plaintiff resulting in serious personal injuries to said Plaintiff, which occurred on or about Peshine Avenue and Madison Avenue in Newark, New Jersey 07108.

20. Specifically, on or about May 13, 2014, at 1:50PM, Plaintiff was lawfully operating his 2012 Jeep Cherokee (hereafter the "Jeep") on Peshine Avenue, near the intersection of Madison Avenue, in Newark, New Jersey.

21. At said time and place, Defendant Detectives Palach and Rivera, while undertaking and discharging their assigned duties as members of the TIDE/TAG initiative, stopped Plaintiff for allegedly speeding. The plaintiff adamantly asserts that he was not violating any traffic laws at the time he was stopped by defendants.

22. The stop of the plaintiff was on a purely pretextual basis due to the Plaintiff's race as an African American male. As stated in their arrest report, defendants Palach and Rivera were assigned to the incident area specifically as a part of the TIDE/TAG initiative, which "targets high crime and narcotics areas with the objective of reducing violent crime." In other words, the defendants were not patrolling for traffic violations. Moreover, the Department of Justice recently concluded that the NPD's policing practices are racially disparate, finding that the NPD stops and arrests black individuals at a rate at least 2.5 times greater than white individuals. *See attached report.*

23. Upon approaching the Plaintiff's vehicle, defendant Palach asked Plaintiff for identification and immediately began questioning Plaintiff regarding his whereabouts and his reasons for being in Newark. The plaintiff provided Palach with his license and answered all questions. Defendant Palach later falsely asserts that the plaintiff provided him with another individual's driver's license.

24. Without justification, defendant Palach instructed Plaintiff to get out of his vehicle. Plaintiff repeatedly asked defendant Palach why he was being removed from the vehicle, but defendant Palach refused to answer. Defendant Palach then opened the driver side door and again instructed Plaintiff to step out of the vehicle, once again refusing to state any reason for this instruction.

25. At this time, defendant Palach attempted to physically force Plaintiff out of the vehicle. Frightened, Plaintiff placed both his hands clearly within view on the steering wheel and continued to ask why he was being removed from the vehicle. Defendant Palach then grabbed Plaintiff's genitals in an aggressive manner, causing Plaintiff significant fear for his personal safety. Defendant Rivera did not attempt to prevent defendant Palach from physically abusing Plaintiff in this manner.

26. Alarmed by defendant Palach's behavior and the events unfolding, a small number of residents began to gather on their property directly adjacent to the street and began recording the incident on their cellular telephones. Plaintiff did not interact with these bystanders in any way. Upon noticing the group, defendant Palach called for additional officers to the scene.

27. These additional officers included defendants Ruane, Torres, Armand and Marcelli.

28. Upon their arrival, defendants Ruane, Torres, Armand and Marcelli immediately charged toward Plaintiff's vehicle. Defendant Ruane ran to the passenger side of Plaintiff's vehicle and began pushing Plaintiff, while defendants Rivera and Palach dragged Plaintiff out from the driver's side.

29. Plaintiff was thrown to the pavement and held down by one of the defendant officers, believed to be defendant Rivera. As defendant Rivera held Plaintiff on the ground, and while Plaintiff was completely unable to move, defendant Palach began using excessive force by punching the Plaintiff in the head and face with a closed fist.

30. Outrageously, Defendant Palach punched Plaintiff in the head and face an estimated ten-to-twenty times while the other defendant officers observed and did nothing. A bystander's video recording captured defendant Palach's vicious assault on Plaintiff.

31. Plaintiff was arrested and transported to the Essex County Narcotics Task Force ("ECNTF") building for processing. As Plaintiff was led into the ECNTF building, defendant Palach verbally abused Plaintiff and, without reason, forcefully grabbed Plaintiff by his throat and choked him for a period of about five seconds.

32. Plaintiff alerted Defendant Officers numerous times that he was in extensive pain and requested medical attention for the injuries inflicted upon him. Even though the plaintiff had sustained obvious physical injuries, including swelling and bleeding on his face, Defendants waited almost an hour before transporting Plaintiff to University Hospital in Newark.

33. At University Hospital, Plaintiff was treated for a number of serious injuries, including a broken nose, concussion, and injuries to his eye, hand and back.

34. As a result of the subject incident, Plaintiff has experienced severe pain and suffering due to his physical injuries. Plaintiff has lost clarity of vision in his eye. His broken

nose has caused him difficulty breathing, especially at night, and will require surgery in the future. Due to continuing pain in his back, Plaintiff had to attend physical therapy twice a week for a period of eight weeks.

35. Moreover, Plaintiff has also suffered a litany of emotional and mental issues after Defendants' attack. The incident left Plaintiff devoid of any feeling of self-worth. Four months ago, Plaintiff was diagnosed with posttraumatic stress disorder. Plaintiff could not eat or sleep; he was having flashbacks, increased anxiety and was afraid to go outside. Plaintiff is now required to take Seroquel and Peroxetine and make regular visits to a psychiatrist in order to control his otherwise debilitating symptoms.

36. Before the subject incident, Plaintiff owned and successfully operated a mechanics business. However, his physical and emotional pain prevented him from working. Because of the pain in his back and legs, Plaintiff could no longer perform the necessary tasks of his trade. He could not sit or bend over the cars; he could not lift heavy objects or carry his tools. He was constantly tired due to his inability to sleep at night. Consequently, Plaintiff was soon forced to cease operations.

37. Plaintiff is currently employed in a full-time logistics position at Nordstrom. Though an upstanding employee, he still requires daily medication to treat his ongoing mental health issues. Without these medications, Plaintiff would not be able to effectively carry out his work-related responsibilities. Additionally, Plaintiff continues to suffer from headaches due to his poor eyesight, which remains a hindrance in his daily tasks.

## ADDITIONAL FACTS SURROUNDING LIABILITY

38. Defendant NJSP is a division of the State of New Jersey. Defendant NJSP, acting through its Superintendent, Defendant Fuentes, is the ultimate policymaking authority for all

officially adopted policies and procedures implemented by employees of Defendant NJSP, including Defendant Officers. Likewise, Defendant NPD, acting through its Police Director at the time, Sheilah Coley, is the ultimate policymaking authority for all officially-adopted policies and procedures implemented by employees of Defendant NPD, including Defendant Officers.

39. Furthermore, both the NJSP and NPD are the entities legally responsible for the hiring, retention, supervision, and training of their respective employees, as well as administering any discipline to said employees.

40. Defendants NJSP and NPD have been placed on notice that there is a pervasive and systematic pattern, custom and practice within their respective departments to use excessive force by rendering vicious beatings to members of the general public – even those who do not resist arrest, including innocent bystanders and those accused of minor criminal infractions – and to make great efforts to use excessive force outside the view of third-party witnesses, and frequently while the person detained in subdued, restrained, or otherwise still in handcuffs.

41. The NJSP has a long-standing de-facto policy of racial profiling as has been acknowledged by New Jersey governors, attorneys general and the New Jersey Senate Judiciary Committee. Based on the NJSP's racial profiling policies, the NJSP was under a federal court enforced Consent Decree (hereafter the "Decree") for ten years.

42. Despite dissolution of the Decree in 2009, the NJSP's pattern of racial profiling and excessive force continues.

43. Similarly, the U.S. Department of Justice and the U.S. Attorney's Office for the District of New Jersey recently launched a three-year investigation into the unconstitutional practices of the NPD, beginning on May 9, 2011, publishing their findings in an official report dated July 22, 2014. This report detailed the NPD's troubling patterns of constitutional

violations, disparate treatment of black citizens, and unreasonable use of force against citizens. The Department of Justice concluded that the NPD engaged in a pattern of unconstitutional practices, chiefly in its use of force, unwarranted stops and arrests and discriminatory police actions. As a consequence, the NPD has been placed under a federal monitoring program. *See DOJ Report.*

44. Moreover, "the [federal] investigation revealed that NPD officers too often use open and closed fist strikes, especially to the head of the subject. In many cases, these actions were not necessary for the officer to control the situation and seemed to be simply retaliatory." *See DOJ Report P.24.*

45. Both within the NJSP and NPD, false reports are rendered, and charges are officially pursued against the victims of these unconstitutional beatings and excessively forceful arrests, but then later are dropped in an effort to intimidate the victims. The investigations into such allegations of excessive force are almost always a virtual whitewash, as NJSP and NPD officers are rarely, if ever, punished for such conduct.

46. In fact, according to federal investigations, during a six-year period, from 2007 to 2012, only *one* excessive force allegation was sustained by the NPD's internal affairs. Conversely, during its investigation, the Department of Justice concluded that the use of force was unreasonable in at least one third of the incident reports reviewed, and that the use of force appeared reasonable on its face in only about half of those incident reports. *See DOJ Report.*

47. Additionally, notice to the NJSP and NPD of the unconstitutional conduct of its officers and employees has also occurred through notices of intent to sue, lawsuits, internal affairs investigations, and media reports.

48. Thus, Defendants NJSP and NPD are on notice of the fact a systemic and pervasive pattern and practice of excessive force and wrongful and unreasonably forceful arrests exist within the NJSP and NPD, and that members of the citizenry are the victims of these acts committed by officers in violation of the Fourth Amendment. Defendant NJSP and NPD officers are allowed, and indeed encouraged, to commit these wrongful and unconstitutional acts with impunity knowing that no discipline, much less meaningful discipline, will follow for acts of excessive force. Such illegal conduct is ratified and condoned by Defendants NJSP and NPD.

49. Defendant Officers Palach, Rivera, Ruane, Torres, Armand and Marcelli are comfortable in the knowledge that any acts of excessive force that they commit will not result in discipline by Defendants NJSP and NPD, even when the act of excessive force occurs. Thus, the lack of discipline for excessive force allowed Defendant Officers to wrongfully stop, arrest and commit excessive and unreasonable force against the Plaintiff because Defendant Officers knew that there would be no official reprisals for their actions against Plaintiff.

50. Upon information and belief, the discovery phase of this litigation will further reveal many other instances where Defendants NJSP and NPD, by and through their officers and employees, have allowed, condoned, encouraged, and otherwise engaged in excessive and unreasonable force, and racial profiling only to fail to discipline for such actions, much less properly supervise and train to prevent further abuses.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF 42 U.S.C. § 1983

51. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 as if set forth fully herein, and further states as follows:

52. At all times material, Plaintiff had the constitutional right to be free from the use of excessive and unreasonable force against his person.

53. The Defendant Officers individually and as a group participated and conspired with one another, under color of state law, to deprive Plaintiff of his constitutional rights by, among other things:

   a. stopping and detaining Plaintiff without probable cause;
   b. falsely arresting Plaintiff;
   c. using excessive and unreasonable force when arresting Plaintiff;
   d. falsely imprisoning and/or detaining Plaintiff;
   e. improperly denying Plaintiff's right to privacy;
   f. denying Plaintiff his right to freedom of travel;
   g. depriving Plaintiff of his right to due process;
   h. depriving Plaintiff of his right to equal protection of the laws;
   i. subjecting Plaintiff to involuntary servitude.

54. Defendant Troopers violated 42 U.S.C. § 1983 by inflicting serious personal injury upon Plaintiff that was grossly disproportionate to the force necessary to arrest Plaintiff in violation of his rights under the Fourth Amendment to the United States Constitution.

55. Defendant Detectives Palach and Rivera, while acting in their capacity as officers for Defendant NPD and under color of law, did intentionally use excessive and unreasonable force by forcefully removing Plaintiff from his vehicle and violently beating him in the head and face with closed fists.

56. Defendant Officers subjected Plaintiff to further indignities by filing a false report and causing Plaintiff to be wrongfully remanded to the Essex County Jail.

57. The above acts constitute a violation of the Civil Rights Act, 42 U.S.C. § 1983 for violation of one's civil and constitutional rights under color of state law.

58. As a proximate result of the aforesaid acts by Defendants, Plaintiff has been damaged and has suffered severe physical and emotional injuries including a broken nose, concussion, damaged eyesight and mental distress and anguish.

## COUNT TWO
## VIOLATION OF 42 U.S.C. § 1981

59. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through as if set forth fully herein, and further states as follows:

60. The acts of the Defendant Officers as well as the NPD constitute a violation of the Civil Rights Act, 42 U.S.C. § 1981.

61. The acts of the Defendants were motivated by racial animosity and by desire to injure, oppress and intimidate the Plaintiff because of his race.

62. As a proximate result of the above-mentioned acts, Plaintiff has suffered damages including severe emotional distress and mental anguish as well as a deprivation of his rights under § 1981 and the Equal Protection Clause of the United States Constitution.

## COUNT THREE
## VIOLATION OF 42 U.S.C. § 1985 (CONSPIRACY TO VIOLATE CIVIL RIGHTS)

63. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through as if set forth fully herein, and further states as follows:

64. The acts of Defendant Officers as well as Defendants NJSP and NPD constitute a violation of the Civil Rights Act, 42 U.S.C. § 1985, namely a conspiracy to violate the civil rights of Plaintiff based on his race.

65. As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe physical and emotional distress and mental anguish as well as deprivation of rights under the Civil Rights laws.

## COUNT FOUR
## VIOLATION OF 42 U.S.C. § 1986

66. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through as if set forth fully herein, and further states as follows:

67. The Defendant Officers and Defendants NJSP and NPD had knowledge of the discrimination/violation of constitutional rights perpetrated on Plaintiff and/or other minorities, including Plaintiff, but neglected and failed to prevent said wrongful and illegal acts when they had power to do so.

68. This neglect, aid and refusal to prevent or rectify is a violation of the Civil Rights Act, 42 U.S.C. § 1986.

69. As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe emotional pain, suffering, anguish and distress and a deprivation of rights under the Civil Rights laws.

## COUNT FIVE
## VIOLATION OF 42 U.S.C. § 1983 (NEGLIGENT SCREENING, HIRING, TRAINING, SUPERVISING – DISCIPLINARY RETENTION OF DANGEROUS DISCRIMINATORY STATE TROOPERS)

70. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through as if set forth fully herein, and further states as follows:

71. The NJSP and NPD were negligent in screening, hiring, training, supervising, disciplining and/or retaining the Defendant Officers in this matter, who they knew or should have known were dangerous and/or acted in a racially discriminatory manner.

72. Defendants NJSP and NPD are liable for the aforesaid acts both under the doctrine of *respondeat superior* and because it permitted conditions to exist which facilitated and/or permitted such conduct to occur.

## COUNT SIX
## NEW JERSEY STATE CIVIL RIGHTS ACTION/STATE CONSITITUTIONAL CLAIM

73. Plaintiff, Aaron Hockaday, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through as if set forth fully herein, and further states as follows:

74. The illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a *de facto* policy to discriminate, use unlawful force, falsely arrest and detain Plaintiff. The actions of the Defendants aforesaid also represent a *de facto* policy to deny Plaintiff his right to travel, equal protection and privacy. All of these violations contravene Plaintiff's constitutional rights under the New Jersey State Constitution including, but not limited to, Article I, Section 1; Article I, Section 5 – denial of rights; and Article I, Section 7 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2).

75. Each individual Defendant was acting at all times in furtherance of his employer.

76. As a result of the aforesaid conduct, Plaintiff has been damaged, including violation of his civil rights and has suffered severe physical and emotional pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment against the Defendants, including but not limited to:

77. An award of compensatory damages and punitive damages against Defendants; for his personal injuries; pain and suffering; past, present and future medical expenses; mental anguish; loss of earning capacity; and loss of capacity to enjoy life; as well as his costs, and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable under the law.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates the undersigned as trial counsel.

/s/ Thomas S. Mirigliano
Thomas S. Mirigliano
Attorney for Plaintiff Aaron Hockaday

Dated: 02/10/2016

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on February 10, 2016, we electronically filed the foregoing with the Clerk of the Court using CM/ECF. We also certify that the foregoing document will be served on all parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted

By: /s/ Thomas S. Mirigliano, Esq.