## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AARON HOCKADAY,** | Civ. No. 16-0762 (KM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **NEW JERSEY ATTORNEY GENERAL'S OFFICE, et al.,** | |
| **Defendants.** | |

**MCNULTY, U.S.D.J.:**

Aaron Hockaday brings this civil rights action, which focuses on the alleged excessive use of force in connection with his arrest. The defendants fall into two groups: those associated with the State of New Jersey and those associated with the City of Newark. Now before the court are the State Defendants' and the Newark Defendants' motions (ECF nos. 4, 14) to dismiss the complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the motions will be granted in part and denied in part.

**THE COMPLAINT**

The Complaint arises from an incident on May 13, 2014. Hockaday was pulled over for a traffic infraction, but the stop got out of hand, and he ended up being arrested and indicted. In connection with that criminal prosecution, Hockaday challenged the validity of his arrest and disputed the officers' account of the circumstances. After a bench trial on downgraded charges, he was convicted of resisting arrest and hindering prosecution, but acquitted of assault.

In response to the motion to dismiss, Hockaday has voluntarily dismissed certain allegations and claims, narrowing and focusing his Complaint. (*See* Section I.A, *infra*.) Reflecting those concessions, the following summary omits certain allegations. The allegations of the complaint are assumed to be true for purposes of the motions to dismiss insofar as they are addressed to the fact of the complaint. *See* pp. 4–5, *infra*.

One group consists of defendants associated with the State of New Jersey (the "State Defendants"). The complaint names the Office of the State Attorney General and the State of New Jersey, Division of State Police ("NJSP"). Joseph Fuentes is sued in his official capacity as Superintendent of the NJSP. (Cplt. ¶ 5)[1] Also named as defendants are three State police officers: Det. Joseph Palach, Sgt. Ruane, and Trooper Torres. (Cplt. ¶¶ 7, 9, 10)

A second group consists of defendants associated with the City of Newark (the "Newark Defendants").[2] The complaint names the City and two Newark police officers: Det. Rivera and Det. Armand. (Cplt. ¶¶ 8, 11, 12) Det. Marcelli, is identified as a Newark police officer, but according the City, he is actually employed by the Essex County Prosecutor's Office. (ECF no. 14-5 at 3 ¶8)

---

[1]

Cplt. = Complaint, ECF no. 1

Def. Br. (State) = Brief in Support of State Motion to Dismiss, ECF no. 4-1

Pl. Br. (State) = Plaintiff's Brief in Opposition to State Motion to Dismiss, ECF no. 9

Def. Reply Br. (State) = Reply Brief in Support of State Motion, ECF no. 11

Def. Br. (City) = Brief in Support of City Motion to Dismiss, ECF no. 14-3

Pl. Br. (City) = Plaintiff's Brief in Opposition to City Motion to Dismiss, ECF no. 18

Def. Reply Br. (City) = Reply Brief in Support of City Motion, ECF no. 28

TIDE/TAG Press Release = Office of Attorney General press release dated April 16, 2014 (ECF no. 14-6).

[2]     For the reasons discussed at Section I.A, *infra*, the City of Newark is substituted for the Newark Police Department. The complaint names Sheilah Coley in her official capacity as Police Director of Newark, but the plaintiff has agreed to dismiss all claims against Coley.

All of the defendant officers were assigned to the New Jersey Attorney General's TIDE/TAG initiative, a joint program involving the NPD, NJSP, the Essex County Prosecutor's Office, and other law enforcement agencies. (Cplt. ¶ 14)

On May 13, 2014, Hockaday was driving his 2012 Jeep Cherokee on Peshine Avenue, near the corner of Madison Avenue in Newark, New Jersey. Palach and Rivera stopped him for a traffic infraction. (Cplt. ¶¶ 19–21)[3] Hockaday answered questions and produced his driver's license. The officers later falsely claimed that he initially produced the license of another person. (Cplt. ¶ 23)

Palach ordered Hockaday out of the vehicle, but refused to answer when Hockaday asked him why. (Cplt. ¶ 24) Palach tried to pull Hockaday out of the vehicle as Hockaday held the steering wheel. Palach then "grabbed Plaintiff's genitals in an aggressive manner." (Cplt. ¶ 25)

Bystanders gathered, some of them recording the events on their cell phones. Palach called for backup; Ruane, Torres, Armand and Marcelli arrived. (Cplt. ¶¶ 26–27) Hockaday was still in the driver's seat. Ruane pushed Hockaday from the passenger side, while Rivera and Palach pulled him from the driver's side. (Cplt. ¶ 28)

Hockaday was thrown to the pavement, where he was held down by (he believes) Rivera. Palach punched Hockaday in the head and face ten to twenty times, while the other officers did nothing. (Cplt. ¶¶ 29–30)

Hockaday was arrested. While he was being transported to the Essex County Narcotics Task Force ("ECNTF") building, Palach verbally abused him and grabbed him by the throat for five seconds. (Cplt. ¶ 31) Despite Hockaday's complaints, the police took almost an hour to transport him to University Hospital in Newark, where he was treated for his injuries. (Cplt. ¶¶ 32–34)

---

[3]     Allegations that the stop and arrest were baseless, or a pretext for racial discrimination, are ruled out by plaintiff's concessions, and are not summarized here.

As narrowed, *see* Section I.A, *infra*, the counts of the Complaint are as follows:

Count One (42 U.S. § 1983) alleges that the Officers used excessive force, causing Hockaday to suffer a broken nose, concussion, damaged eyesight, and mental distress and anguish.

Count Three (42 U.S.C. § 1985) alleges that the Officers, as well as the NJSP and the City, conspired to violate Hockaday's civil right to be free of excessive force.

Count Five (42 U.S.C. § 1983) alleges negligent hiring, training and supervision of the Officers by the City and the NJSP.

Count Six (N.J. Civil Rights Act, N.J. Stat. Ann. § 10:6-2) alleges use of excessive force in violation of the State constitution.[4]

The complaint seeks damages only.

## LEGAL STANDARD

FED. R. CIV. P. 12(b)(1) provides for a motion to dismiss a complaint for lack of subject matter jurisdiction. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa,* 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438. A factual attack,

---

[4]     Count Two (42 U.S.C. § 1981), a claim of racial discrimination, and Count Four, a claim under 42 U.S.C. § 1986, have been voluntarily dropped in response to the motion to dismiss. *See* Section I.A, *infra*. The theory of malicious prosecution, to the extent it underlies the civil rights claims, will be dismissed. *See* Sections I.A & III.B, *infra*.

on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

The United States Court of Appeals for the Third Circuit, interpreting the *Twombly/Iqbal* standard, has provided a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta* [*v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)]. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

### I.   Voluntarily Dismissed Claims/City of Newark Added as Defendant

In the ordinary course, I would first consider the parties' jurisdictional contentions. Here, however, I must first define the claims that Hockaday is asserting. In response to the motion to dismiss, Hockaday has agreed to voluntarily dismiss certain claims and theories. I will grant the motion to dismiss those claims on consent. In addition, I will permit the plaintiff to substitute the City of Newark for the Newark Police Department as defendant.

As filed, the Complaint named former Newark Police Director Sheila Coley as a defendant; claims against her have now been dropped. All claims for punitive damages against public entities have been dropped, as has a time-barred claim under 42 U.S.C. § 1986. As filed, the civil rights and tort claims contained a number of subsidiary legal theories, including racial discrimination and unlawful arrest; Hockaday has dropped all, except for excessive use of

force in connection with his arrest, and part of his malicious prosecution claim.[5]

The motion to dismiss these allegations and claims will be granted on consent. For the record, plaintiff's concessions are legally sound. *See Heck v. Humphrey,* 512 U.S. 477 (1994) (barring civil action that would require negation of criminal conviction); *N'Jai v. Floyd,* 386 F. App'x 141, 144 (3d Cir. 2010) (statute of limitations for 42 U.S.C. § 1986 claim is one year); *Joyce v. City of Sea Isle City,* No. CIV. 04-5345RBK, 2008 WL 906266, at *25 (D.N.J. Mar. 31, 2008) ("Municipalities are immune from punitive damages on § 1983 and § 1985 claims."); *Mauls v. Chain,* 239 F. Supp. 2d 486, 508 (D.N.J. 2002) (under the TCA, N.J. Stat. Ann. § 59:9–2(c) does not permit punitive damages against public entities); *Matheny Sch. & Hosp. v. Borough of Peapack & Gladstone,* No. CIV.A. 13-6802 MAS, 2014 WL 4215453, at *3 (D.N.J. Aug. 25, 2014) (under NJCRA, no municipal liability for punitive damages).

What that means is that Count 2 (a racial discrimination claim) and Count 4 (42 U.S.C. § 1986) are dismissed on consent. As noted above, the claims that remain are focused on excessive use of force and malicious

---

[5]      Here is the relevant passage from the plaintiff's brief in response to the motion to dismiss:

> Based on the foregoing, plaintiff's excessive force claim under §1983, §1985, and NJCRA, against the defendant Newark police officers should not be dismissed. However, plaintiff concedes that any other claims by plaintiff-to include false arrest, stopping and detaining Plaintiff without probable cause, false imprisonment, violation of right to privacy, right to freedom of travel, and subjecting plaintiff to involuntary servitude-that serve to invalidate his underlying convictions for Resisting Arrest and Hindering should be dismissed.

(Pl. Br. (City) at 12)

> As to malicious prosecution, Hockaday more ambiguously states the following:

> To the extent that plaintiff's complaint can be read to include a malicious prosecution claim, plaintiff does not concede that this claim should be dismissed for failure to allege notice compliance as to his Simple Assault charge because that proceeding terminated in his favor.

(Pl. Br. (City) at 13). *See* Section III.B, *infra.*

prosecution under 42 U.S. §§ 1983 and 1985 (*i.e.,* Counts 1, 3, and 6, minus the voluntarily dismissed theories). The City and State agencies are alleged to be liable for the officers' acts on various theories (Count 5).

The subject of municipal liability raises another preliminary issue. The Complaint as originally filed named the NPD, not the City itself, as a defendant. The police department is a department of City government, and is not an entity subject to suit in its own right. The proper defendant is the City of Newark. *Santa Maria v. City of Elizabeth (N.J.)*, Civ. No. 15–3243, 2015 WL 2414706, at *5 & n.2 (D.N.J. May 20, 2015) (collecting cases for proposition that a New Jersey police department is a department of city government, not an entity that can sue and be sued); *Michaels v. State of New Jersey*, 955 F. Supp. 315, 317 n.1 (D.N.J. 1996) (Barry, J.) (holding that Newark police department is not a proper defendant, and treating the City of Newark as proper party for purposes of motion to remand or to dismiss complaint).

Hockaday consents to dismiss the NPD. He seeks to amend his complaint to substitute in the City of Newark as defendant. Such leave is to be "freely" granted, and I do grant it. *See* Fed. R. Civ. P. 15(a)(2).

The City urges that such an amendment would be futile because the statute of limitations has already run. I disagree, because the claims against the City would relate back to the original date of filing of the complaint.

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The error here is one of pleading—and quite a common one, in the Court's experience. This was, as the Rule says, a "mistake concerning the proper party's identity." The plaintiff promptly agreed to correct this error when it was pointed out to him. The City does not deny that the NPD received timely notice of the plaintiff's claims, and the NPD is a department of the City. Indeed, this motion to dismiss was brought on behalf of the NPD and the individual officers by Willie L. Parker, Esq., as Corporation Counsel for the City of Newark. This substitution of defendant works no change to the substance of the complaint; as the Rule contemplates, the amendment is entirely based on "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The City points to no cognizable prejudice that would result from the amendment.

Hockaday's application to swap in the City of Newark for the NPD will be granted, and the claims against the City will be deemed to relate back to date of filing of the Complaint.

Having defined the claims, I proceed to the jurisdictional analysis.

## II. Sovereign Immunity

The State Police, the State Attorney General's Office, and Superintendent Fuentes, as well as the City, move to dismiss the Complaint on jurisdictional grounds, citing their immunity under the Eleventh Amendment. The motion is granted as to the State defendants, but denied as to the City.

### A. The State Agencies and Superintendent Fuentes

Certain of the State defendants—specifically, the "New Jersey Attorney General's Office"; the "State of New Jersey, Division of State Police"; and "Joseph Fuentes, in his Official Capacity as Superintendent of NJSP"—move to

dismiss the complaint on grounds of Eleventh Amendment sovereign immunity. Because it is of jurisdictional stature, Eleventh Amendment immunity may be asserted under Fed. R. Civ. P. 12(b)(1). These Defendants cite Rule 12(b)(6), but the distinction makes no substantive difference, because their challenge is a facial, not a factual one. *See* p. 4, *supra.*

This is a suit for damages. As to such suits for damages, the Eleventh Amendment incorporates a general principle of sovereign immunity that bars citizens from suing any State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–101, 104 S. Ct. 900, 908 (1984); *see also Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S. Ct. 504, 505 (1890). That bar applies unless Congress has abrogated it, or the State has waived it, exceptions that do not apply here:

> The Eleventh Amendment protects a state and its employees from federal suit unless Congress has specifically abrogated the state's immunity, or the state has waived its own immunity. *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 254 (3d Cir.2010); *MCI Telecomm. Corp. v. Bell Atl.-Pa.,* 271 F.3d 491, 503–04 (3d Cir.2001). Congress did not abrogate the states' immunity through the enactment of 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L.Ed.2d 358 (1979), and New Jersey has not waived its immunity in federal court, *see Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth.,* 819 F.2d 413, 418 (3d Cir.1987), *abrogated on other grounds by Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 115 S. Ct. 394, 130 L.Ed.2d 245 (1994).

*Mikhaeil v. Santos,* 646 F. App'x 158, 162 (3d Cir. 2016). The Eleventh Amendment immunity "extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh,* 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002); *Chisolm v. McManimon,* 275 F.3d 315, 323 (3d Cir. 2001)." *Love v. New Jersey State Police,* No. CV141313FLWTJB, 2016 WL 3046257, at *7 (D.N.J. May 26, 2016).

The Attorney General's Office and the State Police are indisputably agencies and departments, or "subunits of the State," entitled to Eleventh Amendment immunity. *New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine,* No. CIV.A.09-683 (KSH), 2010 WL 2674565, at *7 (D.N.J. June 30, 2010) (quoting *Haybarger v. Lawrence County Adult Probation and Parole,* 551 F.3d 193, 198 (3d Cir. 2008), and citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S. Ct. 900 (1984), and *Benn v. First Judicial District of Pennsylvania,* 426 F.3d 233 (3d Cir. 2005)). The holdings to that effect are too well-established to require any extensive independent analysis here. *See Mikhaeil,* 646 F. App'x at 160, 162 (affirming Eleventh Amendment dismissal of claims against "the State of New Jersey, the State Police, the State Attorney General, and individual state agents" in their official capacities); *Atkin v. Johnson,* 432 F. App'x 47, 48 (3d Cir. 2011) (affirming Eleventh Amendment dismissal of claims against the "Pennsylvania State Police"); *Love,* 2016 WL 3046257, at *7–*8 (Eleventh Amendment dismissal of claims against, *inter alia,* the State of New Jersey and the New Jersey State Police); *Polanco v. New Jersey Atty. Gen.'s Office,* No. 2:12-CV-778 DMC JAD, 2013 WL 1339127, at *3 (D.N.J. Mar. 28, 2013) (*sua sponte* Eleventh Amendment dismissal of claims against "the State-entity Defendants New Jersey Attorney General's Office, The New Jersey State Police"); *Trader v. State, Div. of State Police,* No. CIV. 05-4065(RBK), 2006 WL 2524172, at *4 (D.N.J. Aug. 29, 2006). ("[T]he Division of State Police is a state agency, entitled to sovereign immunity. The state would bear the burden of any judgment against the Division, and the Division enjoys minimal autonomy as it is both established by state law and governed by administrators appointed by state executives. N.J.S.A. § 53:1-1, et seq.").

The claims against the Office of the Attorney General and the State Police are therefore dismissed on Eleventh Amendment grounds.

The Complaint also names State Police Superintendent Joseph Fuentes, who is "sued in his official capacity." (Cplt. ¶ 5) The Eleventh Amendment bars

such an official-capacity claim because it "is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 488 (D.N.J. 2006) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989)); *see also Kentucky v. Graham,* 473 U.S. 159, 165, 105 S. Ct. 3099 (1985); *Edelman v. Jordan,* 415 U.S. at 663, 94 S. Ct. at 1356; *Powell v. Ridge,* 189 F.3d 387, 401 (3d Cir.1999).

Hockaday, in response, acknowledges that an official-capacity suit against Fuentes is barred to the extent it seeks damages. He maintains, however—and correctly so—that a suit for prospective or injunctive relief would not be barred. *See, e.g., id.; Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d 528, 534, 537 (D.N.J. 2001) (citing *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991)).[6] But this complaint does not seek injunctive or other prospective relief. Nor do the factual allegations, however broadly read, suggest any basis for such a claim. Any motion to amend the complaint to include such an injunctive claim would have to set forth a proper basis for ongoing relief, as opposed to damages.

The claims against Fuentes are therefore dismissed on Eleventh Amendment grounds.

---

[6]   The argument, specific to 42 U.S.C. § 1983, that a state agency or official is not a "person" is closely related, but distinct. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66–67, 109 S. Ct. 2304, 2310 (1989) ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it."). Cases, including mine, have for brevity run the two issues together. *See, e.g., Endl v. New Jersey*, 5 F. Supp. 3d 689, 696 (D.N.J. 2014) (McNulty, J.). Either way, the disqualifying factor is that the defendant is, or acts on behalf of, the State. *See, e.g., Dorsett v. New Jersey State Police,* No. CIV.A.04CV5652 (WJM), 2007 WL 556890, at *2 (D.N.J. Feb. 15, 2007) ("This Court finds, in agreement with other courts within this district, that the New Jersey State Police is an arm of the State of New Jersey and, thus, is not subject to suit under § 1983.") Here, I do not discuss the issue of a § 1983 "person" separately, however, because the Eleventh Amendment applies more comprehensively to all claims, including state law tort claims.

### B.   Newark

The City of Newark also moves to dismiss the complaint on jurisdictional grounds, claiming that it partakes of the State's Eleventh Amendment and sovereign immunity. On a motion under Fed. R. Civ. P. 12(b)(1), the court may consider evidence extraneous to the pleadings. Because the City submits exhibits—*e.g.,* the TIDE/TAG Press Release—I consider its motion as a factual, not facial, challenge.

The City, of course, is not the State. Section 1983 actions against municipalities are commonplace, and they are not ordinarily barred by the Eleventh Amendment. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S. Ct. 1171 (1979) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities even though such entities exercise a 'slice of state power.'"). *Accord Hill v. Borough of Kutztown,* 455 F.3d 225, 247 (3d Cir. 2006) (invoking State sovereign immunity, but noting that "[i]t does not follow, however, that sovereign immunity protects political subdivisions of states from suit by individuals"); *Kovats v. Rutgers, The State Univ.,* 822 F.2d 1303, 1307 (3d Cir. 1987) (Eleventh Amendment immunity applies to arm of the State, not to a body "comparable to a county or municipality").

Here, however, the City invokes the doctrine that a suit may be barred by the Eleventh Amendment, even where the State is not named as a defendant, "so long as the State is deemed to be the real party in interest." *Haybarger v. Lawrence County Adult Probation and Parole,* 551 F.3d 193, 198 (3d Cir. 2008); *Benn v. First Judicial Dist. of Pa.,* 426 F.3d 233, 239 (3d Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 25, 429, 117 S. Ct. 900 (1997)). In considering whether the State is the real party in interest, the courts are to consider the following three factors: (1) whether the source of the money to pay a judgment would be the State treasury, (2) the status of the defendant entity under State law, and (3) the defendant entity's degree of autonomy. *Fitchik v.*

*N.J. Transit Rail Ops., Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).[7] The burden of establishing immunity rests on the party asserting it. *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001) (citing *Christy v. Pennsylvania Turnpike Comm'n.*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

Newark says it meets the *Fitchik* test because the officers who arrested Hockaday were operating as part of the New Jersey Attorney General's TIDE/TAG initiative.[8] When its officers are implementing that State initiative,

---

[7]     The Court of Appeals for the Third Circuit long held that the first *Fitchik* factor was "the most important factor" in the analysis. *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001) (citing cases). More recently, however, the Court of Appeals has stated that "we [] no longer ascribe primacy to the first factor." *Benn*, 426 F.3d at 239. The financial liability factor is now considered just "one factor co-equal with [the] others in the immunity analysis." *Id.* at 240.

[8]     TIDE/TAG was originally implemented in Trenton. *See* http://nj.gov/oag/newsreleases13/pr20130815b.html (Aug. 15, 2013). The programs were later expanded to include Newark. As described in a press release, the goals of the Newark programs were as follows:

**TIDE**

The Newark Targeted Integrated Deployment Effort (TIDE) is an intelligence-driven surge in law enforcement deployments, led by the State Police and Essex County Prosecutor's Office, to suppress violent crime in identified "hot spots" in the city. The surge will focus on street-level drug and gun crimes, as well as aggressive warrant enforcement and parolee supervision. Partners will utilize shared intelligence and crime analysis from the State Plice Regional Operations Intelligence Center (ROIC).

Deployments will include both high-visibility patrols and covert operations. The primary goal is to stop shootings by reducing the number of offenders carrying firearms and by disrupting the open-air drug markets that are hotbeds for violence in Newark. At the same time, state partners will supplement quality-of-life initiatives already put in place by the Newark Police Department. The New Jersey Division of Alcoholic Beverage Control and the Division of Taxation will target liquor stores, bars and bodegas that are violating state laws and regulations and negatively impacting community safety.

**TAG**

The Targeted Anti-Gun (TAG) Initiative is an arrest and prosecution strategy already in place in Mercer County that now is being implemented in Essex County. It brings New Jersey's tough

says Newark, the City is an "arm of the State" and, as such, is entitled to Eleventh Amendment immunity from suit. I find, however, that Newark has not discharged its burden of establishing that it is an arm of the state under the three *Fitchik* factors.

*First*, Newark has not demonstrated, or even suggested, that any judgment against the City would be paid by the State. The City submits for the Court's consideration the TIDE/TAG press release (ECF no. 14-6), as well as the transcripts of Hockaday's trial and his presentence report, which describe the TIDE/TAG program to some degree. As the City puts it, "the Attorney General has paid millions of dollars toward the [TIDE/TAG] program, and a judgment adversely affecting the officers participating in the program would hamper the effectiveness of this State run program …." (Def. Br. (State) at 18) But investing in this joint program and paying out judgments against the City are not at all the same thing. Nor does the indirect effect of a judgment "adversely affecting the officers" bridge the gap. Even if these officers were State employees, there would be no Eleventh Amendment bar to a claim brought against them in their personal capacities. *See Kentucky v. Graham, supra.* In any event, the City's argument is unconvincing on its own terms; a damages award, paid by the City, cannot be assumed to impair the effectiveness of the TIDE/TAG program in any direct or obvious way. The avoidance of a money judgment paid by the State is the very *raison d'etre* of Eleventh Amendment immunity. The issue here, however, is the immunity of the City, and there is no

---

gun laws to bear on certain offenders who carry guns in public. Under TAG, the Attorney General mandates a "zero tolerance" prosecution policy that effectively increases the sentence for "tagged" gun offenders to at least 3½ years in state prison without parole, up from the current norm of one year. The goal is to stop criminals from carrying guns, so street confrontations do not escalate spontaneously into shootings.

TIDE/TAG Press Release, Office of Attorney General press release dated April 16, 2014 (ECF no. 14-6).

evidence that a judgment against the City would affect the State fisc in the least.

*Second,* "the status of the entity under State law" does not favor immunity. The "entity" in question is the one claiming immunity—here, the City. The status of the City under state law is well-established. It is not an agency or arm of the State. For Eleventh Amendment purposes, it is well established that the City is independent of the State. *See* p.10, *supra.*

Where a novel question is presented in relation to a particular entity, a court will consider such factors as "how state law treats the entity generally; whether the entity can sue or be sued in its own right, whether the entity is separately incorporated, and whether the entity is immune from state taxation." *Brennan v. William Paterson Coll.,* 34 F. Supp. 3d 416, 431 (D.N.J. 2014) (citing *Bowers v. NCAA,* 475 F.3d 524, 548 (3d Cir. 2007)). The City cites generalities, but no specific facts about how participation in TIDE/TAG allegedly affects its "status" under State law, which is well established. It merely analogizes to case law concerning the performance of State functions by County prosecutors and municipal courts, entities which have a very different legal relationship with State government.[9] I cannot find any clear indication that the City, in implementing the TIDE/TAG program, is performing a function, like prosecution or adjudication of State crimes, that "traditionally has been understood to be a State function and subject to State supervision in

---

[9]     Unlike municipalities, county prosecutors and municipal courts discharge traditional state functions, and have been held to occupy a hybrid legal status for purposes of the Eleventh Amendment. The City, analogizing to those cases, argues in its reply brief that the materials attached demonstrate "that other state and county agencies handled the majority of the managerial, administrative, and enforcement responsibilities pursuant to the TIDE-TAG initiative." (Reply Brf. (City) at 10) It is difficult to see how this advances the analogy to the municipal court or County prosecutor cases. For example, it is precisely when it performs such managerial and administrative tasks that a County Prosecutor will be found *not* to be a State "person" under 42 U.S.C. § 1983, because these are not State prosecutorial functions. *Cf., Coleman v. Kaye,* 87 F.3d 1491, 1505 (3d Cir. 1996) (distinguishing between prosecution of crimes, a State function, and administration, a County function, for purposes of § 1983 "person" analysis).

its execution." *In re Camden Police Cases*, No. CIV. 10-4757 RBK/JS, 2011 WL 3651318, at *4 (D.N.J. Aug. 18, 2011). The City, although it perhaps does (as always) exercise a "slice of state power," *Lake Country Estates*, 440 U.S. at 401, remains an independent municipal entity that routinely sues and is sued in its own right.

*Third,* the City has not surrendered its autonomy. The evidence is not clear or specific, but for all that appears here, the City's participation in TIDE/TAG is entirely voluntary. Presumably it may withdraw from the program if it wishes. It may be true, as the City says, that the State sets the priorities of the TIDE/TAG program, and that the City's police officers implement such priorities—chiefly, suppression of violent crime and public illegal gun possession. These, however, are generalities; the City does not bring forward specific facts about its autonomy, or not, with respect to the program. The police officers remain City employees. They continue to patrol the streets—a traditional municipal function—as they always have. When they observe crimes, whether or not they fall within the TIDE/TAG priorities, they surely will nevertheless make an arrest.[10] The City cites no case for the proposition that its officers' participation in what amounts to a joint task force renders it an arm of the State.

That is as far as I can go on the limited record before me. Specific information about the program budget, the lines of authority within it, the substance of any agreements between the City and the State, and so on, is absent. Suffice it to say that I do not find that the City has put forward sufficient evidence at this time to displace the well-established principle that it does not enjoy the State's Eleventh Amendment immunity. The City's motion to dismiss the complaint on jurisdictional grounds is therefore denied.

---

[10]   This arrest, for example, is unrelated to guns or violent crime; it arose from a traffic stop for speeding and running a stop sign. When the confrontation grew physical, the officers called for backup, and the other TIDE/TAG participants in the area responded.

Having disposed of jurisdictional questions, I proceed to consider the Rule 12(b)(6) motions to dismiss in relation to the defendants and claims that remain. The remaining movant defendants are the City of Newark, Detective Joseph Palach, Sgt. Ruane, Trooper Torres, Detective Rivera, and Detective Armand.[11] Those remaining claims are Counts 1, 3, 5, and 6, insofar as they rest on the theories of excessive force, as well as malicious prosecution in relation to the simple assault charge of which Hockaday was acquitted.

## III.   *Heck v. Humphrey*, Excessive Force, and Malicious Prosecution

The City defendants' motion to dismiss raises the bar of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). I recently summarized the *Heck* doctrine as follows:

> Under the *Heck* doctrine, no civil claim that attacks the basis of a criminal conviction can be brought unless and until the conviction itself is successfully attacked. A convicted defendant cannot, for example, sue the government witnesses on the theory that they lied, or sue the police for seizing the evidence on which the conviction was based. Thus *Heck* has often been applied to cut off claims of persons who seek, in effect, to relitigate the merits of currently valid convictions via a civil suit challenging the legality of, *e.g.*, a search. *See, e.g., Crawford v. Frimel*, 337 F. App'x 211, 213 (3d Cir. 2009) (per curiam) (applying *Heck* bar to Fourth Amendment claim as success would imply the invalidity of his conviction); *Hinton v. White*, No. 10-3902, 2012 WL 6089476, at *3 (D.N.J. Dec. 6, 2012) (applying *Heck* bar to illegal search and seizure claim that would call into question state criminal conviction) (citations omitted).

*Pittman v. Metuchen Police Dep't*, No. 12-2044, 2016 WL 1122671, at *5 (D.N.J. Mar. 22, 2016).

Hockaday does not dispute the applicability of *Heck* as a general matter. Indeed, it was in response to the City's citation of *Heck* that Hockaday dropped many of his sub-theories, which would have required a court to impugn the validity of his criminal conviction. *See* Section I, *supra.* Hockaday did not,

---

[11]   Detective Marcelli, as noted above, was named as an officer of the NPD, but is actually employed by the Essex County Prosecutor. The grounds cited below, however, would seem to apply equally to him.

however, drop his claims to the extent they rely on theories of (a) excessive force and (b) malicious prosecution in relation to the simple assault charge of which he was acquitted. I consider them in turn.

### A. Excessive Force

Hockaday is correct that an excessive force claim may for purposes of *Heck* be independent of the merits of a criminal case. Assuming an arrest is based on probable cause, the police may nevertheless have used excessive force, whether in effecting the arrest or thereafter. Thus a finding of excessive force does not necessarily impugn the basis of a criminal defendant's prosecution or conviction.

*Garrison v. Porch,* 376 F. App'x 274, 278 (3d Cir. 2010), for example, held that even a conviction for assault on a police officer did not bar a Section 1983 claim for excessive force arising out of the same incident. The plaintiff in *Garrison* admitted that he assaulted the officer, but alleged that the officer thereafter used excessive force to subdue and arrest him. Because there was "no logical inconsistency" between the plaintiff's initial assault and the defendant officer's subsequent use of excessive force, *Heck* did not bar the plaintiff's excessive force claim. *Id.* at 278-79. "The fact that [the plaintiff's] threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that [the defendant officer] could have used in response which could have risen to the level of unreasonable and excessive." *Id.* at 278.

The *Garrison* analysis accords with that of other, precedential Third Circuit cases. *Lora-Pena v. F.B.I.,* 529 F.3d 503, 506 (3d Cir. 2008), held that the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his unlawful actions." In *Nelson v. Jashurek,* 109 F.3d 142, 145 (3d Cir. 1997), the Third Circuit rejected the argument that plaintiff's conviction for resisting arrest barred his excessive force claim because "it is possible for a finding that [the plaintiff] was resisting

arrest to coexist with a finding that the police used excessive force to subdue him." District courts, too have repeatedly held that an assault conviction does not in itself preclude an excessive force claim. *See, e.g., Day v. Jackson Twp.,* 2013 WL 394151, at *8 (D.N.J. Jan. 30, 2013) (citing *Garrison* in holding that "an unfavorable termination of a[n]…assault on an officer is not necessarily a *Heck* bar to a plaintiff's § 1983 claim alleging excessive force"); *Weber v. Rodriguez,* 2011 WL 2555358, at *4 (D.N.J. June 27, 2011) (denying summary judgment and holding that "[b]ecause Plaintiff's conviction in state court [for resisting arrest and aggravated assault] is not inconsistent with a finding that [d]efendants used excessive force to arrest him, *Heck* does not bar Plaintiff's § 1983 claim [for excessive force]"); *Woodley v. Al–Ayoubi,* 2011 WL 4594204, at *6 (D.N.J. Sept. 2, 2011) (noting that a conviction for resisting arrest is "not inconsistent with a finding that Defendants used excessive force to arrest [the plaintiff]" and upholding the plaintiff's § 1983 claim for excessive force); *Porter v. Dooley,* 2011 WL 4007690, at *3 (D.N.J. Sept. 6, 2011) (denying defendant's motion for summary judgment in which it was argued that, based on the plaintiff's guilty plea to resisting arrest, *Heck* barred his § 1983 claim alleging excessive force).

I therefore hold that *Heck* does not bar Hockaday's claims to the extent they rest on an excessive force theory.

### B.   Malicious Prosecution

As noted above, Hockaday's position as to his malicious prosecution claims is a bit harder to interpret:

> To the extent that plaintiff's complaint can be read to include a malicious prosecution claim, plaintiff does not concede that this claim should be dismissed for failure to allege notice compliance as to his Simple Assault charge because that proceeding terminated in his favor.

(Pl. Br. (City) at 13) As I read this passage,[12] Hockaday does not intend to pursue a malicious prosecution claim as to the offenses of conviction, but he does intend to pursue malicious prosecution as to the offense of acquittal, *i.e.,* simple assault. I therefore consider whether such a claim is barred by *Heck.* I conclude that it is.

Under *Heck,* of course, there is no general bar to litigation of a related civil claim following an acquittal. That is a corollary of the *Heck* prerequisite to suit, *i.e.,* that the relevant prior conviction has been invalidated. *Heck,* 512 U.S. at 486–87 ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.") Relatedly, a general acquittal satisfies the essential element of malicious prosecution (whether under state law or § 1983) that the prior criminal proceeding must have terminated in plaintiff's favor.[13] The *Heck* doctrine and the favorable-termination element of a malicious prosecution claim have the same purpose: "to avoid 'the possibility of the claimant ... succeeding in the tort action after

---

[12]     My reading essentially excludes the stray words "for failure to allege notice compliance," which may refer to a pre-suit notice of claim under the NJ Tort Claims Act, a separate state law issue. Because all malicious prosecution claims are being dismissed, *see infra,* the City's contention that Hockaday failed to file a notice of claim is moot, and I do not reach it.

[13]     Malicious prosecution under 42 U.S.C. § 1983 requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer,* 750 F.3d 273, 296–97 (3d Cir. 2014) (citing *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007)). Similarly, the common law tort of malicious prosecution requires the plaintiff to show that the defendant "(1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in [plaintiff's] favor." *Wiltz v. Middlesex Cnty. Office of Prosecutor,* 249 F. App'x 944, 950 (3d Cir. 2007) (citing *Trabal v. Wells Fargo Armored Serv. Corp.,* 269 F.3d 243, 248 (3d Cir. 2001)).

having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (quoting *Heck*, 512 U.S. at 484).

This, however, was not a general acquittal but a mixed verdict. Hockaday was convicted of two charges, and acquitted of one. The question becomes, then, whether Hockaday's acquittal on the simple assault charge qualifies as a favorable termination for purposes of *Heck* or malicious prosecution. In *Kossler*, the U.S. Court of Appeals for the Third Circuit, sitting en banc, answered a similar question in the negative. Its reasoning is worth quoting at length:

> We are thus faced with a question of first impression in this Circuit: Whether acquittal on at least one criminal charge constitutes "favorable termination" for the purpose of a subsequent malicious prosecution claim, when the charge arose out of the same act for which the plaintiff was convicted on a different charge during the same criminal prosecution. On these facts, we conclude that this question should be answered in the negative. As an initial observation, we note that various authorities refer to the favorable termination of a "proceeding," not merely a "charge" or "offense." *See Marasco*, 318 F.3d at 521; *Haefner*, 626 A.2d at 521; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119 (5th ed.1984); 52 Am.Jur.2d *Malicious Prosecution* § 32 (Supp.2007) ("In the context of a malicious prosecution action, to determine whether a party has received a favorable termination in the underlying case, the court considers the *judgment as a whole* in the prior action; ... the termination must reflect the merits of the action and the plaintiff's innocence of the *misconduct* alleged in the lawsuit." (emphasis added)). Therefore, the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole.
>
> Rather we conclude that, upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged.... When the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element.

*Kossler*, 564 F.3d at 188.

In *Kossler,* the would-be malicious prosecution plaintiff had been found guilty of disorderly conduct, but acquitted of aggravated assault and public intoxication. The charges were legally distinct, but all "arose from the same course of conduct": Kossler's role in a scuffle with a police officer/security guard. Among other things, Kossler allegedly struck and injured the officer's hand. *Id.* at 184, 189. The criminal court judge found that this conduct did not rise to the level of aggravated assault. The Court of Appeals declined to draw distinctions among the three offenses, finding that they rested on an "indivisible factual basis." *Id.* Viewed overall, "the judgment as a whole [did] not reflect the plaintiff's innocence." *Id.* at 188. *See also Bronowicz v. Allegheny Cty.,* 804 F.3d 338, 346 (3d Cir. 2015) ("we required those plaintiffs to demonstrate that the outcomes of their prior criminal proceedings were indicative of their "innocence" of the crimes charged") (citing *Gilles v. Davis,* 427 F.3d 197 (3d Cir. 2005)).

The Third Circuit added that, for policy reasons, it was particularly reluctant to pronounce a rule authorizing a malicious prosecution claim after only a partial acquittal:

> Here, if we were to slap down Judge Colville's "mixed" verdict, we would risk placing Pennsylvania citizens in the worse position of having state court judges reach guilty verdicts on the more serious charges as well, when the facts support conviction, rather than exercise leniency, in part to avoid a federal court's later finding of favorable termination. Hence, the result in this case conforms with the precedent and the purpose of the favorable termination element of malicious prosecution.

*Kossler,* 564 F.3d at 190.

Hockaday does not offer any sufficient basis to distinguish *Kossler.* Here is Hockaday's own account of his state court convictions and acquittal:

> After a bench trial in connection with the incident that forms the basis of plaintiffs complaint, defendant was found guilty of Resisting Arrest in violation of 2C:29-2(a) and Hindering in violation of 2C:29-3(b). (Trial transcript attached hereto as Exhibit B, at 9:10-18, 10:11-25 and 11:1-5). Plaintiff was acquitted of Simple Assault. (Exhibit B, at 10:1-10). With respect to plaintiff's resisting arrest conviction, the trial Court determined that:

> [b]ased upon the observations and the obviousness of the video that in fact he knew the officer was a law enforcement officer effecting the arrest and clearly by his holding onto the wheel and requiring two other officers to come pry his fingers off the wheel, he was clearly purposely preventing or attempting to prevent an arrest, or preventing him from being removed from vehicle. I find him guilty of resisting arrest. . . .

(Exhibit B, at 9:10-18).

Regarding the Simple Assault charge, the trial Court ruled that:

> [in] this particular case the gentleman is extracted from the vehicle and apparently is kicking and so forth. I don't find the defendant guilty of either purposely or knowingly. The issue here is whether the acts of the defendant rise to the level of recklessly caused bodily injury to another. Although there's been testimony about him flailing about and so forth, there's an issue as to whether he struck the officer in the face, part of the fingers being pried from the wheel or whatever. I don't think it rises to the level of recklessly. I don't find the defendant guilty of Count 2, simple assault.

(Exhibit B, at 9:23-25, 10:1-10).

With respect to the Hindering charge, the trial Court ruled as follows:

> [a]s to three, which is hindering one's process, apprehension or prosecution, under 2C:29-3(b), there are three elements under the jury charge: One, the defendant knew that he could or might be charged with an offense. . .the second element involves various variations under the statute that he was either going to be detained, apprehended, investigated, prosecuted, convicted or punished for a violation of Title 39, which is the motor vehicle statutes, which I think in this case would clearly be based upon the motor vehicle issues involving the stop sign and excessive speed, which I think is element two; and three, the defendant acted with purpose to hinder his own detention, investigation, prosecution, conviction or punishment. I don't think he particularly disputed that the gentlemen clung on to the steer wheel. In fact, according to the State's version, he had to have his fingers pried off the wheel at that time. I'm going to find him guilty of hindering as well.

(Exhibit B, at 10:11-25, 11:1-8).

(Pl. Brf. (City) at 2–3, quoting criminal trial transcript, ECF no. 14-4)[14]

The facts giving rise to criminal liability, as in *Kossler*, are "indivisible." The incident consisted of Hockaday's clinging to the steering wheel, requiring two officers to pry his fingers loose and pull him from the car. During the scuffle, Hockaday flailed or kicked, but the judge was not convinced that he had done so with intent to harm the officers. Thus, after a bench trial, the judge found Hockaday guilty of resisting arrest and hindering his detention or prosecution, but not of assault. Hockaday's acquittal of assault, as in *Kossler*, was not one that "indicate[d] the innocence of the accused." It simply reflected the trial court's finding of a reasonable doubt as to one of three legal theories applied to the same wrongful conduct.

Hockaday's partial acquittal does not satisfy *Heck* or the closely related "favorable termination" element of malicious prosecution. The claims in the complaint, to the extent they rest on a malicious prosecution theory, are therefore dismissed.

## IV. Collateral Estoppel

The claims that remain are those that rest on excessive use of force. I next consider the argument of the City and the officers that these excessive force claims are barred by collateral estoppel. The judge in the State criminal case, says the City, resolved critical factual issues against Hockaday, and those

---

[14]    I here anticipate an objection that this issue should not be decided on a motion to dismiss, but should await summary judgment. The material cited consists of the transcript of Hockaday's state court criminal bench trial. (ECF no. 14-4) The court may, on a Rule 12(b)(6) motion, consider judicially noticeable matters of public record without converting the motion to one for summary judgment under Rule 12(d). *See, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). But the procedural distinction is really inconsequential, because there is no procedural irregularity or unfair surprise. The material was attached to the City's motion to dismiss. In his opposing brief, Hockaday heavily relied on this material and extensively quoted it. Of course it is the transcript of his own trial, so he was well aware of it. And I rely on Hockaday's own quotation and characterization of the basis for his mixed acquittal and conviction.

factual findings, given proper preclusive effect, would bar his civil claims here.[15]

Collateral estoppel, or issue preclusion, has the following essential elements: (1) identical issue presented in the earlier and later actions, (2) final judgment on the merits, (3) same party, or one in privity, raising the issue in the later action, (4) a full and fair opportunity to litigate the issue in the earlier action, and (5) that the determination of the issue was essential to the final judgment. *See Alevras v. Tacopina*, 399 F. Supp. 2d 567, 571 (D.N.J. 2005) (citing *Matter of the Estate of Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994)).

As the City sees it,

> [i]n the criminal proceeding (1) the issue of whether Plaintiff complied with police commands or continuously resisted arrest requiring a proportionate degree of force, as well as whether the arrest was supported by probable cause were all decided against Plaintiff in his criminal case; (2) there was a final judgment of conviction on the merits; (3) Plaintiff, himself, was convicted; (4) Plaintiff had a full and fair opportunity to litigate these issues with a burden of proof that favored him more than the burden does in a civil suit.

(Def. Br. (City) at 21)

I am not persuaded, at least at the motion to dismiss stage, that this criminal conviction settled the question of whether the officers used force that was proportionate or, on the other hand, excessive. In collateral estoppel terms, I am unable to conclude that the identical issue was decided, and that it was essential to the final judgment in the criminal case. The analysis is in many ways parallel to that under *Heck*. *See* Section III.A. Because the excessive force theory was not ruled out by the prior conviction, it may be asserted in this action.

---

[15]    The City's assertion of claim preclusion, or res judicata, to bar issues that the defendant could have, but did not, litigate, cannot be resolved on a motion to dismiss. At any rate, the doctrine must be applied with care to a defendant in a criminal case; unlike a plaintiff, he was not the master of the issues that would be litigated in the prior case, and he may not have had the same incentive to assert them for reasons peculiar to the criminal case.

The criminal trial judge's verdict, quoted at pp. 23–24, *supra*, found Hockaday guilty of resisting arrest and hindering his own detention, apprehension or prosecution. The fact essential to both convictions was that Hockaday, knowing he faced apprehension, arrest, or prosecution, refused to let go of the steering wheel so he could be removed from the car.

The civil complaint in this case makes the distinct allegations that, after peeling Hockaday's hands from the steering wheel, the officers pulled Hockaday out of the car, grabbed his genitals, threw him to the pavement, punched him in the head, and later grabbed his throat. It is fair to say that the judge, having heard the evidence and seen a video recording, expressed skepticism. But it is possible to find, as the judge did, that Hockaday resisted and hindered arrest, irrespective of whether the officers thereafter applied excessive force. So even if the judge made an adverse factual finding as to, *e.g.*, an officer's having punched Hockaday, that finding would not have been essential to the judgment of conviction.

The motion to dismiss based on collateral estoppel is therefore denied.

## V.   *Monell* **Liability of the City**

The City moves to dismiss the complaint on the basis that it is not liable for the constitutional torts of its police officer employees under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). I consider whether, with respect to the surviving excessive force claims, the complaint adequately alleges that liability would flow to the City.

A municipality is not vicariously liable via *respondeat superior* for the constitutional torts of its officials. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445 (1981) ("[S]ection 1983 will not support a claim based on a respondeat superior theory of liability.") Rather, a plaintiff must show that any violation of his constitutional rights "implement[ed] or execute[d] a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). "In other words, the [municipality] may not be held liable for constitutional

torts under § 1983 on a vicarious liability theory rooted in respondeat superior but 'it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.'" *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) and quoting *Beck*, 89 F.3d at 971).

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (internal citations omitted). "An official has policymaking authority for *Monell* purposes when the official is responsible as a matter of state law for making policy in the particular area of county business in question, and the official's authority to make policy in that area is final and unreviewable." *Mulholland*, 706 F.3d at 237 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 245–46 (3d Cir. 2006)).

"Custom" is a course of conduct which, although not formally authorized by law, is "so permanent and well-settled" as to virtually constitute law. *Andrews*, 895 F.2d at 1480 (internal citations omitted). "Custom … may also be established by evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971. Inadequate police training may serve as the basis for municipal liability, but only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989).

The Complaint alleges that the City has a pervasive policy and practice of permitting the police to violate citizens' rights, including the right to be free of excessive use of force. It cites a Department of Justice report, dated July 22, 2014, summarizing the results of a three-year investigation of the practices of the NPD. It alleges that complaints are almost never sustained. (Cplt. ¶¶ 43–50) And it alleges, *inter alia,* that negligent or inadequate training or discipline is one cause of such abuses. (Cplt. ¶¶ 70–72)

As allegations, these are sufficient. Discovery may or may not reveal such an official policy, but I will permit discovery to go forward. The motion to dismiss the complaint against the City on *Monell* grounds is denied.[16]

**CONCLUSION**

For the reasons set forth above, the motions to dismiss the Complaint are granted in part and denied in part, in accordance with the accompanying order. For ease of reference, the claims that remain are Counts 1, 3, 5, and 6, to the extent they are based on excessive force. The defendants that remain are the City of Newark, Detective Joseph Palach, Sgt. Ruane, Trooper Torres, Detective Rivera, Detective Armand, and Detective Marcelli.

Dated:  November 14, 2016

_____

**HON. KEVIN MCNULTY, U.S.D.J**

---

[16]    The motion briefly argues that, even if there is a cause of action against Detective Palach, there is no allegation of any wrongful act by Detectives Armand and Rivera. The allegations that the officers acted in concert to effect the arrest are sufficient to survive Rule 12(b)(6) scrutiny.